FILED

Margarito Figueroa

65940 7th ST
Desert Hot Springs, Ca
92240

2022 OCT 28  PM 1: 05

DISTRICT COURT
CENTRAL DIST. OF CALIF
RIVERSIDE

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT, CALIFORNIA

MARGARITO FIGUEROA,

        Plaintiff,

vs.

ZIEVE BROADNAX & STEELE LLP,
SHELLPOINT MORTGAGE SERVICING,
and, THE CWABS TRUST, SERIES 2005-16,
through its Trustee THE BANK OF NEW
YORK MELLON,

DOES 1 THROUGH 25 INCLUSIVE,

Case No.:

**EDCV22-01913 MWF(JPRx)**

42 U.S. CODE § 1983 - CIVIL ACTION FOR DEPRIVATION OF RIGHTS

Request for Jury Trial

Reserve The Right To Amen

3-MILLION DOLLAR CLAIM UNDER 42 U.S. CODE SEC. 1983 ACTION FOR DEPRAVATION OF CIVIL RIGTHS, VIOLATION OF DUE PROCESS, CONSPIRACY TO COMMIT REAL ESTATE DEED FRAUD, FORGERY, WRONFULL FORECLOSURE, AND BREACH OF CONTRACT THIS CLAIM IS ALSO FOR OBSTRUCTION OF THE ADMINISTRATION OF JUSTICE.

[ "Cujusque Rei Potissima Pars"][The Principle Part Of Everything Is In The Beginning]

Comes Now Plaintiff Margarito Figueroa, to file her Claim against the defendant's. The claim will be brought forward in Common Law, "Administrative Law," "Law," "Equity," and Under the Uniform Commercial Code. This 42 U.S. Code Sec. 1983 Civil Action Claim is for Depravation of Civil Right Under Color of Law, conspiracy to commit real estate deed fraud, and forgery.

This case is brought to enforce constitutional rights under 42 U.S.C. § 1983, conspiracy statutes under Federal Law.

Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated, or declaratory relief was unavailable. For the purposes of this section, any Act of Congress applicable exclusively to the District of Columbia shall be a statute of the District of Columbia.

JURISDICTION

1. The Judiciary Act, though, Congress placed admiralty under the jurisdiction of the federal district courts.

2. This court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. 1331, which provides district courts with jurisdiction over civil actions arising under the United States Constitution or laws of the United States.

3. This court has personal jurisdiction over the defendant's corporations because the corporation's principal place of business is in this state.

4. Venue is proper pursuant to 28 U.S.C. 1391(b) because the events giving rise to the allegations in this complaint occurred in this district.

5. Federal court has jurisdiction over this case based on the following reasons:

a. 42 USC 1983 civil rights claim is Constitutional dispute.

b. The plaintiff filed a claim against the state court judge, whereby other state court judges would have a conflict of interest.

c. The state is guilty of real estate deed fraud which is verified by the day-to-day process of registering homeowners' property deeds in their office.

d. The state is in control of the plaintiff's property deed when there is no law that forced the plaintiff to register her property.

e. The state is paying the judge and providing a pension, 401-k, so other state court judges will have a conflict to hear this case in state court.

The State is the real party responsible for the foreclosure on the plaintiff's property using state-licensed sub-agencies to do the dirty work.

6. The amount of damage is over what the state court has jurisdiction to rule on.

7. The defendants violated Federal Laws.

8. The defendants violate the plaintiff's right to due process in state court whereby is liable under 42 U.S.C 1983 a federal civil rights statute.

9. There is no other court available

FACTUAL ALLEGATIONS

10. The original contract in this case was altered, stolen and that there was an addition to the agreement with the following items that are missing from the contract filed in this case:

11. The intent of the agreement is that the original party who funded the alleged loan

per the bookkeeping entries is to be repaid the money,

12. The bank or financial institution involved in the alleged loan will follow GAAP,

13. the lender or financial institution involved in the alleged loan will purchase the promissory note from the borrower,

14. the borrower does not provide any money, money equivalent, credit, funds, or capital or

15. thing of value that a bank or financial institution will use to give value to a check or similar instrument,

16. the borrower is to repay the loan in the same species of money or credit that the bank or financial institution used to fund the loan per GAAP, thus ending all interest and liens, and

17. the written agreement gives full disclosure of all material facts.

18. The Bank Advertised That They Loan Money:

a. I applied for a loan.

b. They refused to loan me legal tender or other depositors' money to fund the alleged bank loan check.

c. The bank misrepresented the elements of the alleged agreement to the alleged borrower.

d. There is no bona fide signature on the alleged promissory note.

e. The promissory note is a forgery.

f. The promissory note—with my name on it— obligates me to pay $ 270,000.00 plus interest, giving it a substantial value in today's market if it were sold to investors.

g. The bank recorded the forged promissory note as a loan from me to the bank.

h. The bank used this loan to fund the alleged bank loan check back to me.

i. The bank refused to loan the plaintiff legal tender or other depositors' money in the amount of $ 270,000.00 or repay the unauthorized loan it recorded from me to the bank.

j. The bank changed the cost and the risk of the alleged loan.

k. The bank operated without my knowledge, permission, authorization, or agreement.

l. The bank denied me equal protection under the law.

m. The bank refused to disclose material facts of the alleged agreement and refused to tell me

n.   if the agreement was for me to fund the alleged bank loan check or if the bank is to use the bank's legal tender or other depositors' money to fund the bank loan check.

o. They refused to disclose whether the check was the consideration loaned for the alleged promissory note.

p. The bank failed to disclose if the promissory note is money or not money.

q. It appears the bank recorded the promissory as an unauthorized loan from me to the bank.

19.  The defendant's committed and conspired to commit real estate deed fraud when they failed deliver the property deed as mandated by the state property transfer statute.

a. The mortgage deal was Not done according to the GAAP accounting principles in violation of the federal law.

b. The electronic credits called the mortgage loan was generated by the plaintiff's signature on the promissory note.

c. The words stamped on the promissory note "pay to the order of" without recourse will verify the bank official who signed there received the electronic credits called the mortgage loan.

d. There was no exchange of money in the mortgage loan.

20.  Valid conveyances require that the executed deed be delivered to and accepted by the grantee.

The property deed was never delivered or accepted by the plaintiff

21.  The defendants committed acts of forgery when they fraudulently made false documents

and altered real documents as if they are genuine.

22.  The fact the Commitment Lending (never was a California Corporation) accepted the

plaintiff's signature on the mortgage lien proves the plaintiff owned the property already.

23. The first illegal mortgage lien was placed on the property by Stearn Lending Inc, never registered as California Corporation after the unlawful registration of the Deed of Trust Document 2005-660838.

23. National Homebuyers Fund Inc, produce the first Assignment of Deed of Trust is employed for Mortgage Electronic Registration System, Inc. **Exhibit: A**

24. On October 14th, 2016, a second Assignment Of Deed of Trust sign by Jennifer Price filed the assignment of Deed of Trust (Document #2016-0464066) against the plaintiff's property without an affidavit from an injured party to provide jurisdiction to the court. **Exhibit: B**

25. The statute the attorney used in the Unlawful Detainer complaint is not a valid law as it does not have the three elements the state constitution mandates must be present to be a valid law.

26. The foreclosing statute is missing the enacting clause, the title, and the body, and therefore, the foreclosing statute is not a valid law and is unconstitutional on its face.

27. The defendants violated the F. D. C. P. A. when they engaged in abuse, threats, coercion, misrepresentation, fraud, harassment, unfair means, and deception to collect a debt where there is no injured party.

## SCHEME TO DEFRAUD

a. The contract filed in this case is forged and missing at least 6- provisions that are listed in the original contract.

b. The foreclosure statute use to provide the court with jurisdiction is not a valid law as it is missing the 3 elements the State Constitution mandates must be present to be a valid law.

c. The State constitution mandates all laws are to be enacted and have an enacting clause, a title, and a body.

d. Original Contract with the signatures of both the alleged borrower, and the lender have never been filed in court to verify there was a bilateral contract.

## THE LENDER FAILED TO FOLLOW THE GAAP ACCOUNNTING LAWS

1. The contract should be rescinded because the attorneys did not provide full disclosure,

the contract is extremely deceptive and unconscionable, In re Pearl Maxwell, 281 B.R. 101. The Truth in Lending Act, Regulation Z, 12 CFR §226.23, states that the security agreement signed with a lender can be rescinded if they have not provided the proper disclosures.

2. The original debt was zero because the Plaintiff's financial asset was exchanged for FED's promissory notes in an even exchange. Promissory Notes and other commercial instruments are legal tender, financial assets to the originator and a liability to the lender.

3. If a security interest in the note is perfected, by recording it on a lien as a registered security, the maker or originator becomes an entitlement holder in the asset.

**54. But the attorney's do not understand that they have this liability because most of them are unaware of it.**

a.      UCC §1-201(24), §3-104, §3-306, §3-105,

b.      UCC §§8-102 (7), (9), (15), (17), §8-501, §8-503, §8-511

c.      UCC §§9-102(9), (11), (12)(B), (49), (64)

d.      12 USC 1813(l)(1)

4. The defendant's records will show the defendants have an offsetting liability to the 55.

**55.plaintiff pursuant to FAS 95, GAAP and Thrift Finance Reports (TFR).**

5. These records include:

a. FR 2046 balance sheet,

b. 1099-OID report,

c. S-3/A registration statement,

d. 424-B5 prospectus and

e. RC-S & RC-B Call Schedules

Plaintiff's claims are brought forward Under Common Law:

56. ELEMENTS FOR COMMON LAW:

a. Controversy (The listed defendants)
b. Specific Claim (wrongful foreclosure, breach of contract,
c. Specific Remedy Sought by Claimant (3-Million dollars)
d. Claim Is Sworn To (Affidavit of Verification attached), and I will verify in open court that all Herein be true.

## PARTIES

A. ZIEVE BROADNAX & STEELE LLP,

b. SHELLPOINT MORTGAGE SERVICING

c. THE CWABS TRUST, SERIES 2005-16 11

c. WESTERN PROGRESSIVE, LLC

Count One: Violation of 42 U.S.C. 1983:

1. Plaintiff incorporates by reference the facts alleged in paragraphs 1-70.
2. The defendant's negligence was the direct and proximate result of the plaintiff's injuries.

Count Two: Violation of Due Process:

1. Plaintiff incorporates by reference the facts alleged in paragraphs 1-

70 The defendants had a duty to follow the law and the constitution.

Count Three: Conspiracy to Commit Real Estate Deed Fraud:

Plaintiff incorporates by reference the facts alleged in paragraphs 1-70 Count Four: Forgery:
2. Plaintiff incorporates by reference the facts alleged in paragraphs 1-70

Count Five:

Wrongful Foreclosure:

3. Plaintiff incorporates by reference the facts alleged in paragraphs 1-70

Count Six:

Breach of Contract:

4. Plaintiff incorporates by reference the facts alleged in paragraphs 1-70

Count Seven:

Real Estate Deed Fraud:

5. Plaintiff incorporates by reference the facts alleged in paragraphs 1-70

Count Seven:

Obstruction of The Administration of Justice

6. Plaintiff incorporates by reference the facts alleged in paragraphs 1-70

WRONGFUL FORECLOSURE

1. The wrongful foreclosure action filed in state court had no injured party and therefore, damages should be granted.

2. The 6th Amendment secures that no person will be deprived of life, liberty, or property without due process of law.

3. The "the injured party" must appear and state he/she is owed a debt, the debtor must be given the right to challenge this debt for "validation" 15 USC 1692g. Only an "injured party" can claim a debt is owed. "Imaginary persons" cannot appear or give testimony and cannot be the "Plaintiff" of any cause of action.

4. There is no injured party in the state foreclosure case and it and therefore the court did not have jurisdiction

BREACH OF CONTRACT

7. The bank advertised that they loan money:

a. I applied for a loan.

b. They refused to loan me legal tender or other depositors' money to fund the alleged bank loan check.

c. The bank misrepresented the elements of the alleged agreement to the alleged borrower.

d. There is no bona fide signature on the alleged promissory note.

e. The promissory note is a forgery.

f. The promissory note—with my name on it— obligates me to pay $270,000.00 plus interest, giving it a substitutional value if it were sold to investors.

g. The bank recorded the forged promissory note as a loan from me to the bank.

h. The bank used this loan to fund the alleged bank loan check back to me.

i. The bank refused to loan me legal tender or other depositors' money in the amount of $270,000.00 or repay the unauthorized loan it recorded from me to the bank.

j. The bank changed the cost and the risk of the alleged loan.

k. The bank operated without my knowledge, permission, authorization, or agreement.

l. The bank denied me equal protection under the law.

m. The bank refused to disclose material facts of the alleged agreement and refused to tell me if the agreement was for me to fund the alleged bank loan check or if the bank is to use the bank's legal tender or other depositors' money to fund the bank loan check.

n. They refused to disclose whether the check was the consideration loaned for the alleged promissory note.

o. The bank failed to disclose if the promissory note is money or not money.

p. It appears the bank recorded the promissory as an unauthorized loan from the plaintiff to the bank.

q. The attorneys are misrepresenting themselves as working for a lender when they are illegally collecting as a 3rd party debt collector in violation of the F.D.C.P.A.

54. The defendants violated the plaintiff's right to due process 42 U. S. C. 1983 by using an unfair court process that is in violation of the federal laws and the court rules.

55. The defendants obstructed the administration of justice.

### NEGLIGENT/RECKLESS CONDUCT

55. As a proximate result of the negligent or reckless conduct of the attorney acting as a 3rd party debt collector the plaintiff suffered injury when the attorney filed unlawful foreclosure

using a foreclosure statute that is missing the 3 elements needed to be considered a valid law.

56. The state constitution mandates laws to be enacted by congress and they must have an enacting clause, a title, and a body.

57. The revised statutes use to provide jurisdiction to the court is not a valid law and therefore rob the court of jurisdiction. The attorneys filed a forged contract in the state foreclosure case.

58. The contract filed is missing the following provisions agreed upon in the original contract:

a) The intent of the agreement is that the original party who funded the alleged loan per the bookkeeping entries is to be repaid the money,

b) The bank or financial institution involved in the alleged loan will follow GAAP,
c) the lender or financial institution involved in the alleged loan will purchase the promissory note from the borrower,

d) the borrower does not provide any money, money equivalent, credit, funds or capital or thing of value that a bank or financial institution will use to give value to a check or similar instrument,

e) the borrower is to repay the loan in the same species of money or credit that the bank or financial institution used to fund the loan per GAAP, thus ending all interest and liens, and

f) the written agreement gives full disclosure of all material facts.

60. The defendants violated the plaintiff's right to due process 42 U. S. C. 1983 by using an unfair court process that is in violation of the federal laws and the court rules.

61. The defendants obstructed the administration of justice.

**Slander of Title**

62. The defendants have caused to be recorded various documents including an unlawful foreclosure which constitutes slander of title, and the plaintiff should be awarded resulting damages to be fully proved at the time of trial.

**Slander of Credit**

63. The plaintiff allege that the actions and inactions of the defendants have impaired their

credit causing them to lose the ability to have good credit entitling them to damages, including statutory punitive damages pursuant to state and federal law, all to be proved at the time of trial.

### Infliction of Emotional Distress

64. The defendants have intentionally and negligently taken illegal actions which have caused the plaintiff's severe emotional distress.

65. The attack on the plaintiff's home using a statute that is not a valid if fraud on the court.

66. The fact part of the original agreement is missing from the contract filed in the state foreclosure case is a clear showing of illegal intent to cause distress.

### Damages

67. The plaintiff is seeking damages for wrongful foreclosure, and he has shown that (a.) there was an irregularity in the foreclosure sale and (b.) the irregularity caused the plaintiff damages. See University Sav. Ass'n v. Springwoods.

67. As a proximate result of the negligent actions of defendants, the plaintiffs have suffered consequential damage and will continue to suffer additional damage in an amount to be fully proved at the time of trial.

68. As a result of these actions by ZIEVE BROADNAX & STEELE LLP, and the defendants.

I have suffered in the following ways:

a)    Lost income. I have my own business. I have lost hours and sometimes days of seeing clients take care of the filings, phone calls, and consultation with my legal team. I have also suffered intense anxiety attacks with a loss of sleep. When I do not sleep and/or I am intensely fatigued, a brain injury I sustained during a sepsis episode a few years ago will create difficulties with aphasia and audio processing, making it difficult to both understand others and to be understood. When this happens, I also need to cancel clients, creating lost income. The amount of income can be up to/ exceed $1200 for each day lost. Because I am self-employed, there is no making up this deficit with vacation or sick leave.

b)    medical costs. The resulting stress and loss of sleep also resulted in chronic pain and physical dysfunction. I sought out and attended a special treatment program available only in Arizona for treatment of chronic neck and back pain and difficulty moving to travel up and downstairs. The cost came out of my own pocket and, with all associated costs, totaling more than $5300. I will never be able to give a monetary value for the increased damage to my health from high blood pressure and associated health consequences from the stressors that I suffered after having a case that was listed as terminated in February and having no further communications (no e-mail or regular mail of any of the filings) until September when I found out last minute that my house was being sold out from underneath

me.

c. No one can return to me the health I have lost in dealing with the dubious actions of the persons named in my lawsuit.

d. I will never completely retrieve my peace of mind and calm the near-constant state of anxiety I find myself in now. These actions have forever altered my mental health and well-being.

e. The defendant's, acted with deliberate indifferent to the Constitution and or federal laws when they violated the plaintiff's right UNDER 42 U.S. CODE SEC. 1983, and the plaintiff's right to "due process".

## The Judge Lacks Immunity When He/ She Violates the Law

The judge has qualified immunity when he/she follows the constitution and the law. The Tucker Act exposes the government to liability for certain claims. Specifically, the Act extended the court's jurisdiction to include claims for liquidated or unliquidated damages arising from the Constitution (including takings claims under the Fifth Amendment), a federal statute or regulation, and claims in cases not arising in tort. The relevant text of the Act is codified in 28 U.S.C. §§ 1346(a) and 1491. The Tucker Act (March 3, 1887, ch. 359, 24 Stat. 505, 28 U.S.C. § 1491) is a federal statute of the United States by which the United States government has waived its sovereign immunity with respect to lawsuits pertaining to 5th Amendment violations of due process.

## The Five Elements of "Due Process

69. In assessing whether this demonstration has been or can be made, the courts look to the five elements, which, over the centuries of judicial experience, have come to be recognized as the sine qua non of "due process."

a. Equality: The system must not discriminate procedurally between parties. If one party is entitled to counsel, then all are entitled. If notice is provided one, it must be provided for all. The essential requirement for Equality is that the system provide a "level playing field" for the disputants. Discrimination in appearance or fact is an anathema to the Equality required to satisfy due process.

b. Economy: The cost of access to the system must not be a barrier to its use or operate to the disadvantage of one or the other parties. This means that grievance and arbitration proceedings should not be made a Board profit center and, in fact, may have to become

subsidized to assure open access.

c. Expedition: As "justice delayed is frequently justice denied," there is an affirmative obligation on the part of the system to expedite ethics and arbitration proceedings. This does not foreclose orderly procedure with adequate time to ensure notice, time to prepare, opportunity to identify and gather witnesses, and otherwise develop facts and arguments. It does, however, foreclose dilatory tactics, unreasonable extension of time, and protraction of hearings.

d. Evidence: The system must be designed and function to elicit evidence, not assumptions; proof, not presumptions. While strict rules of evidence in the judicial sense do not apply, there must be control of what is admitted as relevant and judgment as to what is mere speculation and hearsay designed to prejudice rather than inform.

Equity: The system must produce decisions that reflect a sense and substance of "rightness" and "reasonableness." In matters involving unethical conduct, the punishment should fit the offense. The judgment should reflect consideration of extenuating circumstances and a balancing of competing values and objectives. Moreover, the predictability, consistency, and uniformity of the system's performance is an important measure of Equity.

Conspiracy: A federal criminal conspiracy is built up of five elements:

a. Two or more persons that;

b. Intentionally.

c. Agreed.

d. To violate federal law or defraud the United States; and commit an overt act in furtherance of the agreement.

### Elements for Forgery

Forgery is making, using, altering, or possessing a false document with the intent to commit fraud. Forgery can be the creation of a false document or changing an authentic one. There are several elements to the crime of forgery, and all must be proven before someone can be found guilty:

a. A person must make, alter, use, or possess a false document. Forgery can be creating a

false document from scratch or altering an otherwise genuine document in a material way. The alteration is material if it affects a legal right.

b. The writing must have legal significance.

c. The writing must be false. The writing must have been created or changed in a way that makes it appear that the document represents something that it is not.

d. Intent to defraud.

### Request for Damages

Plaintiffs request compensatory and general damages for expenses for legal expenses, medical bills, mental anguish associated with living with the consequences of the defendant's negligence, loss of income, and damaged credit score, embarrassment from having plaintiff's house listed on Zillow and other Real estate foreclosure websites before while the case is in litigation. The plaintiff requests punitive damages in what the jury finds just and fair. Plaintiff prays that this court enter judgment for the Plaintiff and against each of the Defendants, and grant:

a. compensatory and consequential damages, including damages for emotional distress, humiliation, and other pain and suffering on all claims allowed by law in an amount in excess 3- Million Dollars

h. any further relief that this court deems just and proper, and any other appropriate relief a law

**WHEREFORE**, Plaintiff Margarito Figueroa, request the following

a. That the court enter a judgment in favor of Margarito Figueroa and against the defendants on all counts of the Complaint:

b. That the court award compensatory damages into Plaintiff and against the defendants jointly and severally, in an amount to be determined at trial:

c. That the court award punitive damages to plaintiff, and against the defendants, jointly and severally, in an amount to determine at trial in order that such award will deter similar proscribed conduct by the defendants in the future.

d. That the court award plaintiff, and against the defendants, prejudgment and post-judgment interest on all sums awarded in this action, and including reasonable legal fees,

pursuant to 42.U.S.C. Sec. 1988: and

e. That the court grant Plaintiff such other equitable relief that the court deems appropriate.

### Demand For A Trial By Jury

Comes Now, the plaintiff, and hereby demands jury trial on all issues so triable to a jury.

*Margarito Figueroa* 10/19/2022

Margarito Figueroa

Without Prejudice UCC 1-308

EXIBITH A



WHEN RECORDED MAIL TO:

FIRST PACIFIC FINANCIAL
4 HUTTON CENTRE DRIVE # 500
SANTA ANA, CA 92707

646602758

Space Above 1

DOC # 2004-0930414
11/19/2004 08:00A Fee:33.00
Page 1 of 9
Recorded in Official Records
County of Riverside
Gary L. Orso
Assessor, County Clerk & Recorder

| M | S | U | PAGE | SIZE | DA | PCOR | NOCOR | SMF | MISC. |
|---|---|---|---|---|---|---|---|---|---|
| | | | 9 | | | | | | |
| A | R | L | | | | COPY | LONG | REFUND | NCHG | EXAM |

MA  33

**DEED OF TRUST**

T
MA

THIS DEED OF TRUST is made this November 9th, 2004 among the Trustor, MAGARITO FIGUEROA AND IRMA FIGUEROA, HUSBAND AND WIFE AND JESUS S. HERRERA, A SINGLE MAN, ALL AS **JOINT TENANTS** ( herein "Borrower"), Lawyers Title Company (herein "Trustee"), and the Beneficiary, National Homebuyers Fund, Inc., a California nonprofit public benefit corporation, whose address is 801 12th Street, Suite 600, Sacramento California 95814 (herein "Lender").

BORROWER, in consideration of the indebtedness herein recited and the trust herein created, irrevocably grants and conveys to Trustee, in trust, with power of sale, the following described property located in the County of RIVERSIDE, State of California:

LOT(S) 21 OF TRACT FINE HOMES TRACT NO. 2, IN THE CITY OF
DESERT HOT SPRINGS, COUNTY OF RIVERSIDE, STATE OF CALIFORNIA
AS SHOWN BY MAP ON FILE IN BOOK 31 PAGE(S) 33 AND 34, OF
MAPS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY.

which has the address of 65940 7TH STREET, DESERT HOT SPRINGS, California, 92240 (herein "Property Address");

TOGETHER with all the improvements now or hereafter erected on the property, and all easements, rights, appurtenances and rents (subject however to the rights and authorities given herein to Lender to collect and apply such rents), all of which shall be deemed to be and remain a part of the property covered by this Deed of Trust; and all of the foregoing, together with said property (or the leasehold estate if this Deed of Trust is on a leasehold) are hereinafter referred to as the "property";

TO SECURE to Lender the repayment of the indebtedness evidenced by Borrower's note dated November 9th, 2004 and extensions and renewals thereof (herein "Note"), in the principal sum of U.S. $11,994.00, with interest thereon, providing for monthly installments of principal and interest, with the balance of the indebtedness, if not sooner paid, due and payable on December 1st, 2024; the payment of all other sums, with interest thereon, advanced in accordance herewith to protect the security of this Deed of Trust; and the performance of the covenants and agreements of Borrower herein contained.

T. F - M. F. R. - J. H. S.

Borrower covenants that Borrower is lawfully seized of the estate hereby conveyed and has the right to grant and convey the Property, and that the Property is unencumbered except for encumbrances of record. Borrower covenants that Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to encumbrances of record.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

**1.   Payment of Principal and Interest.** Borrower shall promptly pay when due the principal and interest indebtedness evidenced by the Note and late charges as provided in the Note.

**2. Funds for Taxes and Insurance.** Subject to applicable law or a written waiver by Lender, Borrower shall pay to Lender on the day monthly payments of principal and interest are payable under the Note, until the Note is paid in full, a sum (herein "Funds") equal to one-twelfth of the yearly taxes and assessments (including condominium and planned unit development assessments, if any) which may attain priority over this Deed of Trust, and ground rents on the Property, if any, plus one-twelfth of yearly premium installments for hazard insurance, plus one-twelfth of yearly premium installments for mortgage insurance, if any, all as reasonably estimated initially and from time to time by Lender on the basis of assessments and bills and reasonable estimates thereof. Borrower shall not be obligated to make such payments of Funds to Lender to the extent that Borrower makes such payments to the holder of a prior mortgage or deed of trust if such holder is an institutional lender.

If Borrower pays Funds to Lender, the Funds shall be held in an institution the deposits or accounts of which are insured or guaranteed by a Federal or state agency (including Lender if Lender is such an institution). Lender shall apply the Funds to pay said taxes, assessments, insurance premiums and ground rents. Lender may not charge for so holding and applying the Funds, analyzing said account or verifying and compiling said assessments and bills, unless Lender pays Borrower interest on the Funds and applicable law permits Lender to make such a charge. Borrower and Lender may agree in writing at the time of execution of this Deed of Trust that interest on the Funds shall be paid to Borrower, and unless such agreement is made or applicable law requires such interest to be paid, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds showing credits and debits to the Funds and the purpose for which each debit to the Funds was made. The Funds are pledged as additional security for the sums secured by this Deed of Trust.

If the amount of the Funds held by Lender, together with the future monthly installments of Funds payable prior to the due dates of taxes, assessments, insurance premiums and ground rents, shall exceed the amount required to pay said taxes, assessments, insurance premiums and ground rents as they fall due, such excess shall be, at Borrower's option, either promptly repaid to Borrower or credited to Borrower on monthly installments of Funds. If the amount of the Funds held by Lender shall not be sufficient to pay taxes, assessments, insurance premiums and ground rents as they fall due, Borrower shall pay to Lender any amount necessary to make up the deficiency in one or more payments as Lender may require.

Upon payment in full of all sums secured by this Deed of Trust, Lender shall promptly refund to Borrower any Funds held by Lender. If under paragraph 17 hereof the Property is sold or the Property is otherwise acquired by Lender, Lender shall apply, not later than immediately prior to the sale of the Property or its acquisition by Lender, any Funds held by Lender at the time of application as a credit against the sums secured by this Deed of Trust.

**3. Application of Payments.** Unless applicable law provides otherwise, all payments received by Lender under the Note and paragraphs 1 and 2 hereof shall be applied by Lender first in repayment of amounts payable to Lender by Borrower under paragraph 2 hereof, then to interest payable on the Note, and then to the principal of the Note.

**4. Prior Mortgages and Deeds of Trust; Charges; Liens.** Borrower shall perform all of Borrower's obligations under any mortgage, deed of trust or other security agreement with a lien which has priority over this Deed of Trust, including Borrower's covenants to make payments when due. Borrower shall pay or cause to be paid all taxes, assessments and other charges, fines and impositions attributable to the

I.F - m.F.R.-J H.S

Property which may attain a priority over this Deed of Trust, and leasehold payments or ground rents, if any.

**5. Hazard Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage", and such other hazards as Lender may require and in such amounts and for such periods as Lender may require.

The insurance carrier providing the insurance shall be chosen by Borrower subject to approval by Lender; provided, that such approval shall not be unreasonable withheld. All insurance policies and renewals thereof shall be in a form acceptable to Lender and shall include a standard mortgage clause in favor of and in a form acceptable to Lender. Lender shall have the right to hold the policies and renewals thereof, subject to the terms of any mortgage, deed of trust or other security agreements with a lien which has priority over this Deed of Trust.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower.

If the Property is abandoned by Borrower, or if Borrower fails to respond to Lender within 30 days from the date notice is mailed by Lender to Borrower that the insurance carrier offers to settle a claim for insurance benefits, Lender is authorized to collect and apply the insurance proceeds at Lender's option either to restoration or repair of the Property or to the sums secured by this Deed of Trust.

**6. Preservation and Maintenance of Property; Leaseholds; Condominiums; Planned Unit Developments.** Borrower shall keep the Property in good repair and shall not commit waste or permit impairment or deterioration of the Property and shall comply with the provisions of any lease if this Deed of Trust is on a leasehold. If this Deed of Trust is on a unit in a condominium or a planned unit development, Borrower shall perform all of Borrower's obligations under the declaration or covenants creating or governing the condominium or planned unit development, the by-laws and regulations of the condominium or planned unit development, and constituent documents.

**7. Protection of Lender's Security.** If Borrower fails to perform the covenants and agreements contained in this Deed of Trust, or if any action or proceeding is commenced which materially affects Lender's interest in the Property, then Lender, at Lender's option, upon notice to Borrower, may make such appearances, disburse such sums, including reasonable attorneys' fees, and take such action as is necessary to protect Lender's interest. If Lender required mortgage insurance is a condition of making the loan secured by this Deed of Trust, Borrower shall pay the premiums required to maintain such insurance in effect until such time as the requirement for such insurance terminates in accordance with Borrower's and Lender's written agreement or applicable law, subject further to the requirement, to which Borrower herein expressly agrees and covenants to satisfy, the termination of mortgage guaranty insurance shall be based on the aggregate amount of loans secured by deeds of trust on the Property.

Any amounts disbursed by Lender pursuant to this paragraph 7, with interest thereon, at the Note rate, shall become additional indebtedness of Borrower secured by this Deed of Trust. Unless Borrower and Lender agree to other terms of payment, such amounts shall be payable upon notice from Lender to Borrower requesting payment thereof. Nothing contained in this paragraph 7 shall required Lender to incur an expense or take any action hereunder.

**8. Inspection.** Lender may make or cause to be made reasonable entries upon and inspections of the Property, provided that Lender shall give Borrower notice prior to any such inspection specifying reasonable cause therefore related to Lender's interest in the Property.

**9. Condemnation.** The proceeds of any award or claim for damages, direct or consequential, in connection with any condemnation or other taking of the Property, or part thereof, or for conveyance in lieu of condemnation, are hereby assigned and shall be paid to Lender, subject to the terms of any mortgage, deed of trust or other security agreement with a lien which has priority over this Deed of Trust.

**10. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Deed of Trust granted by Lender to any successor in interest of Borrower shall not operate to release, in any manner, the liability of the original

T. F _ m. F. R — J. H. S

Borrower and Borrower's successors in interest. Lender shall not be required to commence proceedings against such successor or refuse to extend time for payment or otherwise modify amortization of the sums secured by this Deed of Trust by reason of any demand made by the original Borrower and Borrower's successors in interest. Any forbearance by Lender in exercising any right or remedy hereunder, or otherwise afforded by applicable law, shall not be a wavier of or preclude the exercise of any such right or remedy.

**11. Successors and Assigns Bound; Joint and Several Liability; Co-signors.** The covenants and agreements herein contained shall bind, and the rights hereunder shall inure to, the respective successors and assigns of Lender and Borrower, subject to the provisions of paragraph 16 hereof. All covenants and agreements of Borrower shall be joint and several. Any Borrower who co-signs this Deed of Trust, but does not execute the Note, (a) is co-signing this Deed of Trust only to grant and convey that Borrower's interest in the Property to Trustee under the terms of this deed of Trust, (b) is not personally liable on the Note or under this Deed of Trust, and (c) agrees that Lender and any other Borrower hereunder may agree to extend, modify, forbear, or make any other accommodations with regard to the terms of this Deed of Trust or the Note, without that Borrower's consent and without releasing that Borrower or modifying this Deed of Trust as to that Borrower's interest in the Property.

**12. Notice.** Except for any notice required under applicable law to be given in another manner, (a) any notice to Borrower provided for in this Deed of Trust shall be given by delivering it or by mailing such notice by certified mail addressed to Borrower at the Property Address or at such other address as Borrower may designate by notice to Lender as provided herein, and (b) any notice given to Lender shall be given by certified mail to Lender's address stated herein or to such other address as Lender may designate by notice to Borrower as provided herein. Any notice provided for in this Deed of Trust shall be deemed to have been given to Borrower or Lender when given in the manner designated herein.

**13. Governing Law; Severability.** The state and local laws applicable to this Deed of Trust shall be the laws of the jurisdiction in which the Property is located. The foregoing sentence shall not limit the applicability of Federal law to this Deed of Trust. In the event that any provision or clause of this Deed of Trust or the Note conflicts with applicable law, such conflict shall not affect other provisions of this Deed of Trust or the Note which can be given effect without the conflicting provision, and to this end the provisions of this Deed of Trust and the Note are declared to be severable. As used herein, "costs", "expenses" and "attorney's fees" include all sums to the extent not prohibited by applicable law or limited herein.

**14. Borrower's Copy.** Borrower shall be furnished a conformed copy of the Note and of this Deed of Trust at the time of execution or after recordation hereof.

**15. Rehabilitation Loan Agreement.** Borrower shall fulfill all of Borrower's obligations under any home rehabilitation, improvement, repair, or other loan agreement which Borrower enters into with Lender. Lender, at Lender's option, may require Borrower to execute and deliver to Lender, in a form acceptable to Lender, an assignment of any rights, claims or defenses which Borrower which may have against parties who supply labor, materials or services in connection with improvements made to the Property.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

**16. Transfer of the Property or a Beneficial Interest in Borrower.** If all or any part of the Property or any interest in it is sold or transferred (or if a beneficial interest in Borrower is sold or transferred and Borrower is not a natural person), or if Borrower pays, in full, the first lien loan secured by a deed of trust which has priority over this Deed of Trust or if the obligations of such first lien loan are assumed by a third party, without Lender's prior written consent, Lender may, at its option, require immediate payment in full of all sums secured by this Deed of Trust. However, this option shall not be exercised by Lender if exercise is prohibited by federal law as of the date of this Deed of Trust.

I-f- m·F-R- J.H·S

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which Borrower must pay all sums secured by this Deed of Trust. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Deed of Trust without further notice or demand on Borrower.

The foregoing restriction on transfer of the Property will automatically terminate if title of the Property is transferred to the Secretary of Housing and Urban Development ("Secretary") by foreclosure or deed in lieu of foreclosure or if this Deed of Trust is assigned to the Secretary.

17. Acceleration; Remedies. Except as provided in paragraph 16 hereof, upon Borrower's breach of any covenant or agreement of Borrower in this Deed of Trust, including the covenants to pay when due any sums secured by this Deed of Trust, Lender prior to acceleration shall give notice to Borrower as provided in paragraph 12 hereof specifying: (1) the breach; (2) the action required to cure such breach; (3) a date, not less than 10 days from the date the notice is mailed to Borrower, by which such breach must be cured; and (4) that failure to cure such breach on or before the date specified in the notice may result in acceleration of the sums secured by this Deed of Trust and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the nonexistence of a default or any other defense of Borrower to acceleration and sale. If the breach is not cured on or before the date specified in the notice, Lender, at Lender's option, may declare all of the sums secured by this Deed of Trust to be immediately due and payable without further demand and may invoke the power of sale and any other remedies permitted by applicable law. Lender shall be entitled to collect all reasonable costs and expenses incurred in pursuing the remedies provided in this paragraph 17, including, but not limited to, reasonable attorney's fees.

If Lender invokes the power of sale, Lender shall execute or cause Trustee to execute a written notice of the occurrence of an event of default and of Lender's election to cause the Property to be sold and shall cause such notice to be recorded in each county in which the Property or some part thereof is located. Lender or Trustee shall mail copies of such notice in the manner prescribed by applicable law. Trustee shall give public notice of sale to the persons and in the demand on Borrower, shall sell the Property at public auction to the highest bidder at the time and place and under the terms designated in the notice of sale in one or more parcels and in such order as Trustee may determine. Trustee may postpone sale of all or any parcel of the Property by public announcement at the time and place of any previously scheduled sale. Lender or Lender's designee may purchase the Property at any sale.

Trustee shall deliver to the purchaser Trustee's deed conveying the Property so sold without any covenant or warranty, expressed or implied. The recitals in the Trustee's deed shall be prima facie evidence of the trust of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to all reasonable costs and expenses of the sale, including, but not limited to, reasonable Trustee's and attorney's fees and costs of title evidence; (b) to all sums secured by this Deed of Trust; and (c) the excess, if any, to the person or persons legally entitled thereto.

18. Borrower's Right to Reinstate. Notwithstanding Lender's acceleration of the sums secured by this Deed of Trust due to Borrower's breach, Borrower shall have the right to have any proceedings begun by Lender to enforce this Deed of Trust discontinued at any time prior to five days before sale of the Property pursuant to the power of sale contained in this Deed of Trust or at any time prior to entry of a judgment enforcing this Deed of Trust if: (a) Borrower pays Lender all sums which would be then due under this Deed of Trust and the Note had no acceleration occurred; (b) Borrower cures all breaches of any other covenants or agreements of Borrower contained in this Deed of Trust; (c) Borrower pays all reasonable expenses incurred by Lender and Trustee in enforcing the covenants and agreements of Borrower contained in this Deed of Trust, and in enforcing (D) Borrower takes such action as Lender may reasonably require to assure that the lien of this Deed of Trust, Lender's interest in the Property and Borrower's obligation to pay the sums secured by this Deed of Trust shall continue unimpaired. Upon such payment and cure by Borrower, this Deed of Trust and the obligations secured hereby shall remain in full force and effect as if no acceleration had occurred.

I. F_m.F.R._J.H.S

**19. Assignment of Rents; Appointment of Receiver; Lender in Possession.** As additional security hereunder, Borrower hereby assigns to Lender the rents of the Property, provided that Borrower shall, prior to acceleration under paragraph 17 hereof or abandonment of the Property, have the right to collect and retain such rents as they become due and payable.

Upon acceleration under Paragraph 17 hereof or abandonment of the Property, Lender, in person, by agent or by judicially appointed receiver shall be entitled to enter upon, take possession of and manage the Property and to collect the rents of the Property including those past due. All rents collected by Lender or the receiver shall be applied first to payment of the costs of management of the Property and collection of rents, including, but not limited to, receiver's fees, premiums on receiver's bonds and reasonable attorney's fees and then to the sums secured by this Deed of Trust. Lender and the receiver shall be liable to account only for those rents actually received.

**20. Reconveyance.** Upon payment of all sums secured by this Deed of Trust, Lender shall request Trustee to reconvey the Property and shall surrender this Deed of Trust and all notes evidencing indebtedness secured by this Deed of Trust to Trustee. Trustee shall reconvey the Property without warranty and without charge to the person or persons legally entitled thereto. Such person or persons shall pay all costs of recordation, if any.

**21. Substitute Trustee.** Lender, at Lender's option, may from time to time appoint a successor trustee to any Trustee appointed hereunder by an instrument executed and acknowledged by Lender and recorded in the office of the Recorder of the county where the Property is located. The instrument shall contain the name of the original Lender, Trustee and Borrower, the book and page where this Instrument is recorded and the name and address of the successor trustee. The successor trustee shall, without conveyance of the Property, succeed to all the title, powers and duties conferred upon the Trustee herein and by applicable law. This procedure for substitution of trustee shall govern to the exclusion of all other provisions for substitution.

**22. Request for Notices.** Borrower requests that copies of the notice of default and notice of sale be sent to Borrower's address which is the Property Address. Lender requests that copies of notices of foreclosure from the holder of any lien which has priority over this Deed of Trust be sent to Lender's address, as set forth on page one of this Deed of Trust, as provided in Section 2924(b) of the Civil Code of California.

**23. Statement of obligation.** Lender may collect a fee not to exceed $15 for furnishing the statement of obligation as provided by Section 2943 of the Civil Code of California.

**REQUEST FOR NOTICE OF DEFAULT**
-----------------------------------------AND FORECLOSURE UNDER SUPERIOR----------------

**MORTGAGES OR DEEDS OF TRUST**

In accordance with Section 292rb, Civil Code, request is hereby made that a copy of any notice of default and a copy of any notice of sale under the deed of trust (or mortgage) recorded_____, in Book_____,

Page_____, records of_____ County (or filed for recording with recorder's serial number_____,_____

County), California, executed by

as trustor (or mortgagor) in which

is named as beneficiary (or mortgagee) and

I.F. - M.F.R. - J.H.S.

as trustee be mailed to

_____
(name)

at

_____
(address)

NOTICE:  A copy of any notice of default and of any notice of sale will be sent only to the address contained in this recorded request.  If your address changes, a new request must be recorded.


Signature_____


IN WITNESS WHEREOF, Borrower has executed this Deed of Trust.


*Irma Figueroa*

IRMA FIGUEROA


MAGARITO FIGUEROA


JESUS S. HERRERA


STATE OF CALIFORNIA_____COUNTY
OF_____

On this _____ *10th* _____ day of *nov. 2004* _____, before me the undersigned, a Notary Public in and for said State, personally appeared *IRMA FIGUEROA & MARGARITO FIGUEROA & JESUS S. HERRERA* ____, personally known to me, or proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the foregoing instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity, and that by his/her/their signatures(s) on the instrument the person, or the entity upon behalf of which the person acted, executed the instrument.

Witness my hand and official seal        Signature *Elena Hernandez*



ELENA HERNANDEZ
Commission # 1411162
Notary Public - California
Riverside County

## ILLEGIBLE NOTARY SEAL DECLARATION
## GOVERNMENT CODE 27361.7

I CERTIFY UNDER PENALTY OF PERJURY THAT THE NOTARY SEAL ON THE
DOCUMENT WHICH THIS STATEMENT IS ATTACHED, READS AS FOLLOWS:

NAME OF NOTARY: Elena Hernandez

COUNTY WHERE BOND IS FILED: Riverside

DATE COMMISSION EXPIRES: 5-11-2007

PLACE OF EXECUTION OF THIS DECLARATION: San Bernardino

DATE: 11-18-2004

COMMISSION NUMBER: 1411162

SOUTHLAND TITLE

JENNIFER ELLIS
TITLE ASSISTANT

(Reserved for official seal)                    *ELENA HERNANDEZ*

                                                Name (typed or printed)

                                        My commission expires: *May 11, 2007*


## REQUEST FOR RECONVEYANCE

TO TRUSTEE:

The undersigned is the holder of the note or notes secured by this Deed of Trust. Said note or notes, together with all other indebtedness secured by this Deed of Trust, have been paid in full. You are hereby directed to cancel said note or notes and this Deed of Trust, which are delivered hereby, and to reconvey, without warranty, all the estate now held by you under this Deed of Trust to the person or persons legally entitled thereto.

Date:

*I.F - m.F.R - J.H.S.*

**DOC # 2005-0660838**
08/15/2005 08:00A Fee:54.00
Page 1 of 16
Recorded in Official Records
County of Riverside
Larry W. Ward
Assessor, County Clerk & Recorder

RECORDING REQUESTED BY
FIRST AMERICAN TITLE COMPANY
LENDERS ADVANTAGE

Recording Requested By:
STEARNS LENDING, INC.

Return To:
STEARNS LENDING, INC.

4 HUTTON CENTRE DRIVE, SUITE 500
SANTA ANA, CA  92707

Prepared By:

STEARNS LENDING, INC.
4 HUTTON CENTRE DRIVE, SUITE 500
SANTA ANA, CA  92707

664-171-021-0

Space Above This Li

2 71 8283

| M | S | U | PAGE | SIZE | DA | PCOR | NOCOR | SMF | MISC. |
|---|---|---|------|------|----|------|-------|-----|-------|
|   |   |   | 16   |      |    |      |       |     |       |
|   |   |   |      |      |    |      |       |     | MA    |
| A | R | L |      |      | COPY | LONG | REFUND | NCHG | EXAM |

# DEED OF TRUST

LOAN NO.:  11000880
ESCROW NO.:  11200-MS

MIN   100183300000221763
MERS Phone: 1-888-679-6377

T MA

## DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 11, 13. 18, 20 and 21. Certain rules regarding the usage of words used in this document are also provided in Section 16.

(A) "Security Instrument" means this document, which is dated     AUGUST 05, 2005
together with all Riders to this document.
(B) "Borrower" is
MARGARITO  FIGUEROA AND IRMA  FIGUEROA, HUSBAND AND WIFE AS JOINT TENANTS

Borrower's address is 65940 7TH STREET, DESERT HOT SPRINGS, CA  92240-
Borrower is the trustor under this Security Instrument.
(C) "Lender" is
STEARNS LENDING. INC., A CALIFORNIA CORPORATION

Lender is a  CORPORATION
organized and existing under the laws of  CALIFORNIA

M·F·R·
Initials:
I.F

CALIFORNIA-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT WITH MERS       Form 3005  1/01
VMP-6A(CA) (0207)                        Page 1 of 15        LENDER SUPPORT SYSTEMS, INC MERS6ACA.NEW (06/03)

Lender's address is

4 HUTTON CENTRE DRIVE, SUITE 500, SANTA ANA, CA  92707

(D) "Trustee" is

CARRIAGE ESCROW INC., A CALIFORNIA CORPORATION

(E) "MERS" is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns. **MERS is the beneficiary under this Security Instrument.** MERS is organized and existing under the laws of Delaware, and has an address and telephone of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS.

(F) "Note" means the promissory note signed by Borrower and dated          AUGUST 05, 2005

The Note states that Borrower owes Lender

TWO HUNDRED SEVENTY THOUSAND AND NO/100 X X X X X X X X X X X X X X X X X X X X X X X X    Dollars

(U.S. $ 270,000.00                ) plus interest. Borrower has promised to pay this debt in regular Periodic Payments and to pay the debt in full not later than    SEPTEMBER 01, 2035

(G) "Property" means the property that is described below under the heading "Transfer of Rights in the Property."

(H) "Loan" means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under the Note, and all sums due under this Security Instrument, plus interest.

(I) "RIDERS" means all riders to this Security Instrument that are executed by Borrower. The following riders are to be executed by Borrower [check box as applicable]:

| ☐ Adjustable Rate Rider | ☐ Condominium Rider | ☐ 1-4 Family Rider |
|---|---|---|
| ☐ Graduated Payment Rider | ☐ Planned Unit Development Rider | ☐ Biweekly Payment Rider |
| ☐ Balloon Rider | ☐ Rate Improvement Rider | ☐ Second Home Rider |
| ☐ Other(s) [specify] | | |

(J) "Applicable Law" means all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions.

(K) "Community Association Dues, Fees, and Assessments" means all dues, fees, assessments, and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization.

(L) "Electronic Funds Transfer" means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.

(M) "Escrow Items" means those items that are described in Section 3.

(N) "Miscellaneous Proceeds" means any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.

(O) "Mortgage Insurance" means insurance protecting Lender against the nonpayment of, or default on, the Loan.

(P) "Periodic Payment" means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.

M.F.R.

Initials:

VMP-6A(CA) (0207)                          Page 2 of 15                          Form 3005  1/01

(Q) "RESPA" means the Real Estate Settlement Procedures Act (12 U.S.C. Section 2601 et seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

(R) "Successor in Interest of Borrower" means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

TRANSFER OF RIGHTS IN THE PROPERTY

The beneficiary of this Security Instrument is MERS (solely as nominee for Lender and Lender's successors and assigns) and the successors and assigns of MERS. This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower irrevocably grants and conveys to Trustee in trust, with power of sale, the following described property located in the

|  COUNTY  | of | RIVERSIDE |
| [Type of Recording Jurisdiction] |  | [Name of Recording Jurisdiction] |

LOT 21 OF TRACT FINE HOMES TRACT NO. 2, AS PER MAP RECORDED IN BOOK 31, PAGE(S) 33 AND 34 OF MISCELLANEOUS MAPS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY.

Parcel ID Number: 664-171-021-0                                    which currently has the address of

65940 7TH STREET                                                                      [Street]

DESERT HOT SPRINGS                          [City], California    92240-    [Zip Code]

("Property Address"):

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances

*M·F·R*

Initials: _____

Form 3005  1/01

VMP-6A(CA) (0207)                                    Page 3 of 15

of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

1. **Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

2. **Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

3. **Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be

m.F.R
Initials:

in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than twelve monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than twelve monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

**4. Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the



lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

**5. Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee and Borrower further agrees to generally assign rights to insurance proceeds to the holder of the Note up to the amount of the outstanding loan balance. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee and Borrower further agrees to generally assign rights to insurance proceeds to the holder of the Note up to the amount of the outstanding loan balance.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with

m·F·P.

Initials: _____

the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

**6. Occupancy.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

**7. Preservation, Maintenance and Protection of the Property; Inspections.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

**8. Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

**9. Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable



attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

**10. Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

**(a) Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.**

$M \cdot F \cdot P$

Initials:

(b) Any such agreements will not affect the rights Borrower has - if any - with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.

11. **Assignment of Miscellaneous Proceeds; Forfeiture.** All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

12. **Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender

M·F·R
Initials:

to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

13. **Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

14. **Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

15. **Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

M.F.R

Initials: J F

**16. Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

**17. Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

**18. Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**19. Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

**20. Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA

requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

21. **Hazardous Substances.** As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

22. **Acceleration; Remedies. Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale and any other remedies permitted by Applicable Law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.**

If Lender invokes the power of sale, Lender shall execute or cause Trustee to execute a written notice of the occurrence of an event of default and of Lender's election to cause the Property to be sold. Trustee shall cause this notice to be recorded in each county in which any part of the Property is located. Lender or Trustee shall mail copies of the notice as prescribed by Applicable Law to Borrower and to the other persons prescribed by Applicable Law. Trustee shall give public notice of sale to the persons and in the manner prescribed by Applicable Law. After the time required by Applicable Law, Trustee, without demand on Borrower, shall sell the Property at public auction to the highest bidder at the time and place and under the terms designated in the notice of sale in one or more parcels and in any order Trustee determines. Trustee may postpone sale of all or any parcel of the Property by public announcement at the time and place of any previously scheduled sale. Lender or its designee may purchase the Property at any sale.

Trustee shall deliver to the purchaser Trustee's deed conveying the Property without any covenant or warranty, expressed or implied. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable Trustee's and attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.

23. **Reconveyance.** Upon payment of all sums secured by this Security Instrument, Lender shall request Trustee to reconvey the Property and shall surrender this Security Instrument and all notes evidencing debt secured by this Security Instrument to Trustee. Trustee shall reconvey the Property without warranty to the person or persons legally entitled to it. Lender may charge such person or persons a reasonable fee for reconveying the Property, but only if the fee is paid to a third party (such as the Trustee) for services rendered and the charging of the fee is permitted under Applicable Law. If the fee charged does not exceed the fee set by Applicable Law, the fee is conclusively presumed to be reasonable.

24. **Substitute Trustee.** Lender, at its option, may from time to time appoint a successor trustee to any Trustee appointed hereunder by an instrument executed and acknowledged by Lender and recorded in the office of the Recorder of the county in which the Property is located. The instrument shall contain the name of the original Lender, Trustee and Borrower, the book and page where this Security Instrument is recorded and the name and address of the successor trustee. Without conveyance of the Property, the successor trustee shall succeed to all the title, powers and duties conferred upon the Trustee herein and by Applicable Law. This procedure for substitution of trustee shall govern to the exclusion of all other provisions for substitution.

25. **Statement of Obligation Fee.** Lender may collect a fee not to exceed the maximum amount permitted by Applicable Law for furnishing the statement of obligation as provided by Section 2943 of the Civil Code of California.

m·F·R

Initials: J f

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any RIDER executed by Borrower and recorded with it.

Witnesses:

_____
                                                                -Witness

_____
                                                                -Witness

_____(Seal)          _____(Seal)
MARGARITO FIGUEROA        -Borrower          IRMA FIGUEROA              -Borrower

_____(Seal)          _____(Seal)
                          -Borrower                                    -Borrower

_____(Seal)          _____(Seal)
                          -Borrower                                    -Borrower

_____(Seal)          _____(Seal)
                          -Borrower                                    -Borrower

State of CALIFORNIA
County of *Riverside* E.H.                                              } ss.

On *August 5, 2005*            before me, *EIENA HERNANDEZ, Notary Public*

                                                                personally appeared

MARGARITO FIGUEROA AND IRMA FIGUEROA

, personally known to me (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s) or the entity upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal.

_____ (Seal)

ELENA HERNANDEZ
Commission # 1411162
Notary Public - California
Riverside County
My Comm. Expires May 11, 2007

m·F·R.

Initials: I.F

# CERTIFICATION

Under the provisions of Government Code  27361.7    I certify under

the penalty of perjury that the following is a true copy of illegible

wording found in the attached document.

( Print or Type the page number(s) and Wording below ) :

" See Attached Document For Clarity "

Riverside

Elero Hernandez, Notary Public

DATE :        8 , 12 , 05

SIGNATURE :



Margarito Figueroa
65940 7 TH ST
Desert Hot Springs, Ca
92240

September 21, 2022

Jack Navarro, CEO/ DBA/
Shellpoint Servicing/A division of Newrez
75 Beattie Pl #300, Greenville, SC 29601

**Re: Acceleration warning (Notice of intent to Foreclose)**

Account: 0579480315 (the "Loan")
Property Address: 65940 7TH ST, Desert Hot
Springs, Ca 92240 (the "Property")

**Additional Request FOR Validation OF Disputed Debt Obligation**

This NOTICE is not intended, nor does it diminish in any way any previous requests or demands for validation of debt but is intended to and does supplement all previous requests and or communications sent by me associated with your account number 0579480315, referenced above.

In addition to all previous demands for validation of the alleged debt please provide the following within 20 days as required by law.

A certified copy of the **original LOAN APPLICATION,** associated with Lender Case Number 0579480315, both front and back, containing any and all signatures, endorsements, transfers, alterations, and notations occurring over the entire existence of the document associated with your above referenced account.

A certified copy of the **original MORTGAGE / DEED OF TRUST,** associated with Lender Case Number 0579480315, both front and back, containing any and all signatures, endorsements, transfers, alterations, and notations occurring over the entire existence of the document associated with your above referenced account.

A certified copy of the **original ADJUSTABLE- R A T E NOTE,** associated with Lender Case Number 0579480315, both front and back, containing any and all signatures, endorsements, transfers, alterations, and notations occurring over the entire existence of the document associated with your above referenced account.

A certified copy of the **original Adjustable-Rate Rider,** associated with Lender Case Number 0579480315, both front dond back, containing any and all signatures, endorsements, transfers, alterations, and notations occurring over the entire existence of the document associated with your above referenced account.

**Any and all CUSIP numbers** on or assigned to or associated with the **original LOAN APPLICATION** associated with Lender Case Number 0579480315 on your above referenced account.

Any **and all CUSIP numbers** on or assigned to or associated with the **original MORTGAGE / DEED OF TRUST** associated with Lender Case Number 057948031 on your above referenced account.

**Any and all CUSIP numbers** on or assigned to or associated with the **original ADJUSTABLE RATE NOTE** associated with Lender Case Number 0579480315 on your above referenced account.

**Any and all CUSIP numbers** on or assigned to or associated with the **original Adjustable Rate Rider** associated with Lender Case Number 0579480315 on your above referenced account.

*******************************************

If the original MORTGAGE / DEED OF TRUST associated with Lender Case Number 0579480315 and ADJUSTABLE RATE NOTE associated with Lender Case Number 0579480315, have been separated at any time in their existence and do not currently reside in your physical possession in their original state as required by law, you will be required to provide individual Witnesses, their title, position, duties and dates at the time of separation, who have firsthand knowledge with sworn affidavits signed under penalty of perjury, along with a full accounting and full documentation of the reasons and circumstances surrounding the cause of the separation, including, but not limited to a full listing of any entities, organizations, corporations who have, or have had access to or possession of original MORTGAGE/ DEED OF TRUST and ADJUSTABLE RATE NOTE associated with the Lender Case Number 0579480315 on your above referenced account, should Shellpoint Servicing Company and/or any of it's affiliates proceed to file a Notice of Trustee Sale with the Riverside County Recorder to claim an interest in "the property", and I may exercise My Right to bring a Court action to assert the Nonexistence of a Default, or any other defense to acceleration, foreclosure, and sale the Real Property of which I am the Rightful Owner in Possession.

All previous requests / demand for Validation and Verification of the alleged debt sent by Certified Mail to Shellpoint Servicing Company have been Non-responsive and/or ignored.

It is my belief that the debt you claim I owe is not a valid debt obligation which imposes a personal liability on me. If you refuse to provide the additional requested information it will be deemed that you acknowledge that the debt obligation you claim I owe is not valid at all and all documentation obtained to date by Margarito Figueroa will be forwarded to the Attorney General of California, and other entities charged with the investigation and prosecution of financial crimes, and consumer protection violations.

Thank you in advance for your prompt attention and cooperation to resolving this matter.

_margarito Figueroa_    Date 09/21/2022

NOTICE of Additional Request FOR Validation of Debt OBLIGATION
Sent Certified Mail Number: 7020-3160-0002-1816-9969



P.O. BOX 51850
LIVONIA MI 48151-5850
RETURN SERVICE REQUESTED



**Phone Number:** 866-316-4706
**Fax:** 866-467-1137
www.shellpointmtg.com
**Mon - Thurs:** 8:00AM-10:00PM
**Fri:** 8:00AM-10:00PM
**Sat:** 8:00AM-3:00PM

ᵗₙᵗᵗᵗₗₗₙₚᵗᵗᵖᵗᵖᵗᵇᵗᵗₐₗₗₗₐᵗᵗₙₚᵗᵗᵗᵗᵗᵗₗₗₗₗᵗᵖᵗᵖᵗᵗᵗₗₗₗₗᵗᵗᵗᵗᵗ
S-SFRECS20 L-1211 R-117
PFQFEO00202173 - 696733298 I07366
MARGARITO FIGUEROA
IRMA FIGUEROA
65940 7TH ST.
DESERT HOT SPRINGS CA 92240-3017

| Loan Number: | 0579480315 |
|---|---|
| Principal Balance: | $194,841.50 |
| Property: | 65940 7TH ST<br>DESERT HOT SPRINGS, CA 92240 |

03/18/2022

## IMPORTANT NOTICE – INTEREST RATE AND MORTGAGE PAYMENT CHANGES

**Mortgage Modification Reminders**

We want to remind you about some important terms of your modification. Per the modification agreement, your loan is subject to interest rate adjustment(s) until it reaches its interest cap rate, which was based on the market interest rate as of the date that the modification agreement was prepared.

**Modification Payment Information**

The table below shows the schedule of adjustments to your current interest rate and estimated future changes to your monthly mortgage payment(s).

| MONTHS | INTEREST RATE | INTEREST RATE CHANGE DATE | MONTHLY PRINCIPAL AND INTEREST PAYMENT AMOUNT | ESTIMATED MONTHLY ESCROW PAYMENT AMOUNT* | TOTAL ESTIMATED MONTHLY PAYMENT AMOUNT* | MONTHLY PAYMENT BEGINS ON |
|---|---|---|---|---|---|---|
| 12 | 3% | 05/01/2021 | $712.26 | $306.80 | $1,019.06 | 06/01/2021 |
| 167 | 3.625% | 05/01/2022 | $776.82 | $306.80 | $1,083.62 | 06/01/2022 |

*Your total estimated monthly payment amount includes an escrow amount for property taxes, hazard insurance, and other escrowed expenses (if applicable), which may change your total monthly payment. The escrow payment amounts shown are based on the current data and present a reasonable estimate of expenditures for future escrow obligations; however, escrow payments may be adjusted periodically in accordance with applicable law. Your total estimated monthly payment amount is calculated by adding the monthly principal, interest, and escrow payment amount.

**Mortgage Assistance**

We remain committed to helping homeowners. If you are concerned or anticipate challenges with your new monthly payments, contact us right away at 866-316-4706 Monday through Thursday 8:00AM-10:00PM, Friday 8:00AM-10:00PM, and Saturday 8:00AM-3:00PM EST.

If you are facing financial difficulties—whether they are short or long term—start exploring your options today. Information and educational resources are available to you at Fannie Mae's Know Your Options™ website at https://www.knowyouroptions.com.

HUD-approved counselors who are available to provide you with the information and assistance you may need. You can use the search tool at http://www.hud.gov/offices/hsg/sfh/hcc/fc/ or call 1-800-569-4287 to find a counseling agency in your area that can offer free foreclosure prevention services. Additionally, the Homeowner's HOPE™ Hotline offers free HUD-certified counseling services and is

**SEE REVERSE SIDE OR ATTACHED FOR AN IMPORTANT STATEMENT OF YOUR RIGHTS.**

# CHASE ◯

## Terms and Conditions (Remitter and Payee):

* Please keep this copy for your record of the transaction
* The laws of a specific state will consider these funds to be "abandoned"
  if the Cashier's Check is not cashed by a certain time
    - Please cash/deposit this Cashier's Check as soon as possible to
      prevent this from occurring
    - In most cases, the funds will be considered "abandoned"
      before the "Void After" Date
* Placing a Stop Payment on a Cashier's Check
    - Stop Payment can only be placed if the Cashier's Check
      is lost, stolen, or destroyed
    - We may not re-issue or refund the funds after the stop payment has
      been placed until 90 days after the original check was issued
* Please visit a Chase branch to report a lost, stolen, or destroyed Cashier's Check
  or for any other information about this item

FOR YOUR PROTECTION SAVE THIS COPY    Customer Copy
**CASHIER'S CHECK**                    1145625310

09/08/2022
Void after 7 years

**Remitter:**    IRMA FIGUEROA/MARGARITO FIGUEROA REYES

$** 1,280.15 **

**Pay To The
Order Of:**    SHELL POINT MORTGAGE SERVICE
               PO BOX 51850 LIVONIA MI 48151

Memo: loan#0579480315

Note: For information only. Comment has no effect on bank's payment.

Drawer: **JPMORGAN CHASE BANK, N.A.**
NON NEGOTIABLE

# CHASE 🟠

### Terms and Conditions (Remitter and Payee):

* Please keep this copy for your record of the transaction
* The laws of a specific state will consider these funds to be "abandoned"
  if the Cashier's Check is not cashed by a certain time
    - Please cash/deposit this Cashier's Check as soon as possible to
      prevent this from occurring
    - In most cases, the funds will be considered "abandoned"
      before the "Void After" Date
* Placing a Stop Payment on a Cashier's Check
    - Stop Payment can only be placed if the Cashier's Check
      is lost, stolen, or destroyed
    - We may not re-issue or refund the funds after the stop payment has
      been placed until 90 days after the original check was issued
* Please visit a Chase branch to report a lost, stolen, or destroyed Cashier's Check
  or for any other information about this item

**FOR YOUR PROTECTION SAVE THIS COPY**          **Customer Copy**
### CASHIER'S CHECK                                1145625126

08/01/2022
Void after 7 years

**Remitter:**    IRMA FIGUEROA/MARGARITO FIGUEROA REYES

$** 1,280.15 **

**Pay To The**   SHELL POINT MORTGAGE SERVICE
**Order Of:**    PO BOX 51850 LIVONIA MI 48151

Memo:  Loan #0579480315

Drawer: **JPMORGAN CHASE BANK, N.A.**
## NON NEGOTIABLE

Note: For information only. Comment has no effect on bank's payment.



**U.S. Postal Service™**
**CERTIFIED MAIL® RECEIPT**
*Domestic Mail Only*

For delivery information, visit our website at *www.usps.com*.

OFFICIAL USE

| | |
|---|---|
| Certified Mail Fee  $3.75 | |
| $ | $0.00 |

Extra Services & Fees (check box, add fee as appropriate)
- ☐ Return Receipt (hardcopy) $ $0.00
- ☐ Return Receipt (electronic) $ $0.00
- ☐ Certified Mail Restricted Delivery $ $0.00
- ☐ Adult Signature Required $ $0.00
- ☐ Adult Signature Restricted Delivery $

Postage $0.58

Total Postage and Fees $4.33

Postmark Here

DESERT HOT SPRINGS

JUL 2022

07/01/2022

Sent To SHell Point MORGAGE SERVICE

Street and Apt. No., or PO Box No. P.O. BOX 51850

City, State, ZIP+4® LIVONIA MI 48151

PS Form 3800, April 2015 PSN 7530-02-000-9047   See Reverse for Instructions

7020 0640 0000 1812 0977



## Terms and Conditions (Remitter and Payee):

* Please keep this copy for your record of the transaction
* The laws of a specific state will consider these funds to be "abandoned"
  if the Cashier's Check is not cashed by a certain time
    - Please cash/deposit this Cashier's Check as soon as possible to
      prevent this from occurring
    - In most cases, the funds will be considered "abandoned"
      before the "Void After" Date
* Placing a Stop Payment on a Cashier's Check
    - Stop Payment can only be placed if the Cashier's Check
      is lost, stolen, or destroyed
    - We may not re-issue or refund the funds after the stop payment has
      been placed until 90 days after the original check was issued
* Please visit a Chase branch to report a lost, stolen, or destroyed Cashier's Check
  or for any other information about this item

**FOR YOUR PROTECTION SAVE THIS COPY**          **Customer Copy**

### CASHIER'S CHECK                               1145624979

06/30/2022
Void after 7 years

**Remitter:**    IRMA FIGUEROA/MARGARITO FIGUEROA REYES

$** 1,280.15 **

**Pay To The
Order Of:**    SHELL POINT MORTGAGE SERVICE
               PO BOX 51850 LIVONIA MI 48151

Memo:- Loan#0579480315

Drawer: **JPMORGAN CHASE BANK, N.A.**
**NON NEGOTIABLE**

Note: For information only. Comment has no effect on bank's payment.



## Terms and Conditions (Remitter and Payee):

* Please keep this copy for your record of the transaction
* The laws of a specific state will consider these funds to be "abandoned"
  if the Cashier's Check is not cashed by a certain time
    - Please cash/deposit this Cashier's Check as soon as possible to
      prevent this from occurring
    - In most cases, the funds will be considered "abandoned"
      before the "Void After" Date
* Placing a Stop Payment on a Cashier's Check
    - Stop Payment can only be placed if the Cashier's Check
      is lost, stolen, or destroyed
    - We may not re-issue or refund the funds after the stop payment has
      been placed until 90 days after the original check was issued
* Please visit a Chase branch to report a lost, stolen, or destroyed Cashier's Check
  or for any other information about this item

FOR YOUR PROTECTION SAVE THIS COPY

**CASHIER'S CHECK**

Customer Copy

1596542597

05/31/2022

Void after 7 years

**Remitter:**   IRMA FIGUEROA/MARGARITO FIGUEROA REYES

$** 1,169.11 **

**Pay To The Order Of:**   SHELL POINT MORTGAGE SERVICE
PO BOX 51850 LIVONIA MI 48151

Memo: Loan #0579480315

Drawer: **JPMORGAN CHASE BANK, N.A.**
NON NEGOTIABLE

# CHASE ◯

## Terms and Conditions (Remitter and Payee):

* Please keep this copy for your record of the transaction
* The laws of a specific state will consider these funds to be "abandoned" if the Cashier's Check is not cashed by a certain time
    - Please cash/deposit this Cashier's Check as soon as possible to prevent this from occurring
    - In most cases, the funds will be considered "abandoned" before the "Void After" Date
* Placing a Stop Payment on a Cashier's Check
    - Stop Payment can only be placed if the Cashier's Check is lost, stolen, or destroyed
    - We may not re-issue or refund the funds after the stop payment has been placed until 90 days after the original check was issued
* Please visit a Chase branch to report a lost, stolen, or destroyed Cashier's Check or for any other information about this item

**FOR YOUR PROTECTION SAVE THIS COPY**          **Customer Copy**

## CASHIER'S CHECK                                 1145624721

04/28/2022
Void after 7 years

**Remitter:**     IRMA FIGUEROA/MARGARITO FIGUEROA REYES

$** 1,019.06 **

**Pay To The Order Of:**   SHELL POINT MORTGAGE SERVICE
P.O BOX 51850 LIVONIA MI 48151

Memo: Loan # 0579480315

Note: For information only. Comment has no effect on bank's payment.

Drawer: **JPMORGAN CHASE BANK, N.A.**
NON NEGOTIABLE

# CHASE ◑

## Terms and Conditions (Remitter and Payee):

* Please keep this copy for your record of the transaction
* The laws of a specific state will consider these funds to be "abandoned"
  if the Cashier's Check is not cashed by a certain time
    - Please cash/deposit this Cashier's Check as soon as possible to
      prevent this from occurring
    - In most cases, the funds will be considered "abandoned"
      before the "Void After" Date
* Placing a Stop Payment on a Cashier's Check
    - Stop Payment can only be placed if the Cashier's Check
      is lost, stolen, or destroyed
    - We may not re-issue or refund the funds after the stop payment has
      been placed until 90 days after the original check was issued
* Please visit a Chase branch to report a lost, stolen, or destroyed Cashier's Check
  or for any other information about this item

FOR YOUR PROTECTION SAVE THIS COPY        Customer Copy

**CASHIER'S CHECK**                            1103933783

03/30/2022
Void after 7 years

**Remitter:**   IRMA FIGUEROA/MARGARITO FIGUEROA REYES

$** 1,005.00 **

**Pay To The**   SHELL POINT MORTGAGE SERVICING
**Order Of:**    P.O BOX 51850 LIVONIA MI 48151

Memo: loan # 0579480315                     Drawer: **JPMORGAN CHASE BANK, N.A.**

Note: For information only. Comment has no effect on bank's payment   NON NEGOTIABLE

# CHASE ⬡

## Terms and Conditions (Remitter and Payee):

* Please keep this copy for your record of the transaction
* The laws of a specific state will consider these funds to be "abandoned"
  if the Cashier's Check is not cashed by a certain time
  - Please cash/deposit this Cashier's Check as soon as possible to
    prevent this from occurring
  - In most cases, the funds will be considered "abandoned"
    before the "Void After" Date
* Placing a Stop Payment on a Cashier's Check
  - Stop Payment can only be placed if the Cashier's Check
    is lost, stolen, or destroyed
  - We may not re-issue or refund the funds after the stop payment has
    been placed until 90 days after the original check was issued
* Please visit a Chase branch to report a lost, stolen, or destroyed Cashier's Check
  or for any other information about this item

FOR YOUR PROTECTION SAVE THIS COPY                    **Customer Copy**

**CASHIER'S CHECK**                                        9645203837

02/26/2022
Void after 7 years

**Remitter:**    IRMA FIGUEROA/MARGARITO FIGUEROA REYES

$** 1,005.00 **

**Pay To The**    SHELL POINT MORTGAGE SERVICING
**Order Of:**     P.O. BOX 51850 LIVONIA MI  48151

Memo: Loan# 0579 480315

Drawer: **JPMORGAN CHASE BANK, N.A.**
NON NEGOTIABLE

Note: For information only. Comment has no effect on bank's payment.

# CHASE ○

## Terms and Conditions (Remitter and Payee):

* Please keep this copy for your record of the transaction
* The laws of a specific state will consider these funds to be "abandoned" if the Cashier's Check is not cashed by a certain time
    - Please cash/deposit this Cashier's Check as soon as possible to prevent this from occurring
    - In most cases, the funds will be considered "abandoned" before the "Void After" Date
* Placing a Stop Payment on a Cashier's Check
    - Stop Payment can only be placed if the Cashier's Check is lost, stolen, or destroyed
    - We may not re-issue or refund the funds after the stop payment has been placed until 90 days after the original check was issued
* Please visit a Chase branch to report a lost, stolen, or destroyed Cashier's Check or for any other information about this item

FOR YOUR PROTECTION SAVE THIS COPY            Customer Copy

**CASHIER'S CHECK**                                    9645203675

01/31/2022
Void after 7 years

**Remitter:**    IRMA FIGUEROA/MARGARITO FIGUEROA REYES

$** 1,005.00 **

**Pay To The Order Of:**    SHELL POINT MORTGAGE SERVICING
P.O. BOX 51850 LIVONIA MI 48151

Memo: Loan# 0579480315

Drawer:  **JPMORGAN CHASE BANK, N.A.**
NON NEGOTIABLE

Note: For information only. Comment has no effect on bank's payment

# CHASE ○

## Terms and Conditions (Remitter and Payee):

* Please keep this copy for your record of the transaction
* The laws of a specific state will consider these funds to be "abandoned" if the Cashier's Check is not cashed by a certain time
    - Please cash/deposit this Cashier's Check as soon as possible to prevent this from occurring
    - In most cases, the funds will be considered "abandoned" before the "Void After" Date
* Placing a Stop Payment on a Cashier's Check
    - Stop Payment can only be placed if the Cashier's Check is lost, stolen, or destroyed
    - We may not re-issue or refund the funds after the stop payment has been placed until 90 days after the original check was issued
* Please visit a Chase branch to report a lost, stolen, or destroyed Cashier's Check or for any other information about this item

FOR YOUR PROTECTION SAVE THIS COPY

**CASHIER'S CHECK**

**Customer Copy**

1145624132

12/29/2021
Void after 7 years

**Remitter:** IRMA FIGUEROA/MARGARITO FIGUEROA REYES

$** 1,005.00 **

**Pay To The Order Of:** SHELL POINT MORTGAGE SERVICING
P.O BOX 51850 LIVONIA MI 48151

Memo: Loan # 0579480315

Drawer: **JPMORGAN CHASE BANK, N.A.**

NON NEGOTIABLE

Note: For information only. Comment has no effect on bank's payment.

# CHASE ⬡

## Terms and Conditions (Remitter and Payee):

* Please keep this copy for your record of the transaction
* The laws of a specific state will consider these funds to be "abandoned"
  if the Cashier's Check is not cashed by a certain time
    - Please cash/deposit this Cashier's Check as soon as possible to
      prevent this from occurring
    - In most cases, the funds will be considered "abandoned"
      before the "Void After" Date
* Placing a Stop Payment on a Cashier's Check
    - Stop Payment can only be placed if the Cashier's Check
      is lost, stolen, or destroyed
    - We may not re-issue or refund the funds after the stop payment has
      been placed until 90 days after the original check was issued
* Please visit a Chase branch to report a lost, stolen, or destroyed Cashier's Check
  or for any other information about this item

FOR YOUR PROTECTION SAVE THIS COPY          Customer Copy
**CASHIER'S CHECK**                                1145624001

11/29/2021
Void after 7 years

**Remitter:**   IRMA FIGUEROA/MARGARITO FIGUEROA REYES

$** 1,005.00 **

**Pay To The
Order Of:**   SHELL POINT MORTGAGE SERVICING
P.O BOX 51850 LIVONIA MI 48151

Memo· Loan # 0579480315

Drawer: **JPMORGAN CHASE BANK, N.A.**
NON NEGOTIABLE

Note: For information only. Comment has no effect on bank's payment